UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LAKESHA NORINGTON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:12 CV 396 |
| v. | ) | |
| | ) | |
| GEORGE PAYNE, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

Lakesha Norington, a *pro se* plaintiff, filed an amended complaint in this matter on August 20, 2012. (DE # 6.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

## Excessive Use of Force

Norington alleges that George Payne unnecessarily authorized a cell extraction team to enter her cell on June 4, 2012. She argues that it was unnecessary because she did not want to see a nurse. Nevertheless, the complaint makes clear that Norington, a convicted prisoner, refused a direct order to cuff-up. It is irrelevant whether or not she wanted to see a nurse. As explained in *Sandin v. Conner*, 515 U.S. 472, 485 (1995), convicted prisoners may be moved or relocated at the discretion of custodial officials. She alleges that she was not violent or threatening. But when she refused to cuff-up, she created a disruption.

> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a

> prison's internal security is peculiarly a matter normally left to the discretion of prison administrators carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Whitley v. Albers*, 475 U.S. 312, 321-22 (1986) (quotation marks, citations, and ellipsis omitted).

Norington argues that she did not need to be cuffed because the nurse could have looked at and spoken to her through the cell door, but "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" does not establish a basis for liability. *Whitley,* 475 U.S. at 321-322. Thus, the mere fact that George Payne ordered a cell extraction team to enter Norington's cell was not inherently an excessive use of force.

Moreover, Norington has not alleged any facts from which the court can plausibly infer that the team used excessive force when it entered her cell and restrained her. The "core requirement " for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Norington has not described anything that could be described as malicious or sadistic. Rather, she describes the team entering her cell,

3

placing handcuffs and shackles on her, and verbally warning her before they turned her over. Though Norington says that she was injured, she provides no description of her injuries. Rather she states that injury "as herein used means: any wrong or damage done to another either in his/her person; rights; reputation or property. Unlike the ordinary meaning of injury (that which damage the body) a legal injury is any damage resulting from a violation of a legal right, and which the law will recognize as deserving of redress." (DE # 6 at 5, citations omitted.) Given this definition and the absence of any description of physical harm, it is clear that Norington could not state an excessive use of force claim against the cell extraction team even if she had named them as defendants.

## Nutra Loaf

"On June 4, 2012, George Payne issued a memo stating . . . that Ms. Norington was to receive only nutra loaf because of her assaulting staff with a lunch tray that was styrofoam and bodily waste on staff with a milk carton and sandwich baggies." (DE # 6 at 12.) Norington does not allege that it was wrong to punish her for throwing bodily waste on the guards. Nor was the punishment unrelated to the offense. Norington used food containers to hold her excrement so that she could throw it on guards. Temporarily changing her meals as a result is the kind of administrative decision that *Whitley* said "should be accorded wide-ranging deference . . . to preserve internal order and discipline and to maintain institutional security." 475 U.S. at 321-22.

Rather, Norington alleges that restricting her to nutra loaf denied her access to her medically prescribed diet. Norington states that she was prescribed "(1) one high calorie and (1) high protein diet (3) times a day." *Id.* at 14. Though it is not entirely clear what that diet entails, based on her description of nutra loaf as "the days meals ground into one loaf and served after being cooked" (*id.* at 13), nutra loaf would not violate her prescribed diet because it would be the exact same food, albeit served in a much less appetizing way. Based on these allegations, Norington does not state a claim merely because she was ordered to be fed only nutra loaf.

However, Norington alleges that the nutra loaf that she actually received was different. She alleges that it was served raw and that she received smaller portions than her medical prescription required. She states that she told George Payne about these problems on June 7 or 8, 2012. She alleges that he said that there was nothing wrong with the food. Norington alleges that she continued to be served nutra loaf until June 18, 2012. Though the complaint is vague, it is reasonable to infer that she is alleging that she continued to receive undersized portions of raw nutra loaf.

The Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, and shelter. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to

the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To the extent that this claim is properly construed as a medical claim, the test is whether a defendant was deliberately indifferent to the plaintiff's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Id.* at 1373. Here, it is not clear what diagnosis Norington had received, nor precisely what treatment the doctor mandated. Nevertheless, there is no indication in this complaint that her condition would have been obvious to a layperson. Nor is it clear whether the quantity of food that she received denied her the minimal civilized measure of life's necessities. However, giving her the benefit of the inferences to which she is entitled at the pleading stage of a lawsuit, she states a claim against George Payne for preventing her from receiving anything to eat other than small, raw servings of nutra loaf. However, because she has not plausibly alleged that he knew about this problem before June 7, 2012, she does not state a claim for any meals served before she told him about the problem on June 7 or June 8, 2012.

For the foregoing reasons, the court:

(1) **GRANTS** Lakesha Norington leave to proceed against George Payne in his individual capacity for monetary damages for preventing her from receiving anything

to eat other than small, raw servings of nutra loaf from June 7, 2012, until June 18, 2012, in violation of the Eighth Amendment;

(2) **DISMISSES** all other claims;

(3) **DIRECTS** the clerk to transmit the summons and USM-285 forms for George Payne to the United States Marshals Service along with a copy of this order and a copy of the amended complaint (DE # 6);

(4) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on George Payne; and

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that George Payne respond, as provided for in the FEDERAL RULES OF CIVIL PROCEDURE and N.D. IND. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.[1]

**SO ORDERED.**

Date: October 9, 2012

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[1] N.D. IND. L.R. 10-1(b) exempts answers to *pro se* complaints from the obligation from including a verbatim, paragraph-by-paragraph recitation of the complaint.