UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LAKESHA NORINGTON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 3:12 CV 396 |
| GEORGE PAYNE, | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Lakesha Norington, a *pro se* plaintiff, is proceeding in this case against George Payne for preventing her from receiving anything to eat other than small, raw servings of nutra loaf from June 7, 2012, until June 18, 2012, in violation of the Eighth Amendment. However, pursuant to 42 U.S.C. § 1997e(a), a prisoner may not bring an action in federal court until "such administrative remedies as are available are exhausted." The defendant filed a motion for summary judgment asserting that the Westville Correctional Facility had a grievance system, but that Norington did not file a grievance about this issue. In response, Norington does not dispute that the prison had a grievance system. Rather, she attaches two formal grievances that she declares that she filed, but were unanswered. Because neither of those grievances are about receiving small, raw servings of nutra loaf, they do not demonstrate that she made any effort to grieve the issues involved in this case. Therefore the summary judgment motion will be granted.

Norington declares that on June 19, 2012, she mailed two informal grievances to George Payne. (DE # 56 at 1-3.) She declares that he did not respond to either informal grievance. (*Id.* at 2-3.) She declares that on July 2, 2012, she mailed two corresponding, formal grievances. (*Id.* at 2-3.) She declares that she never received a response to either one. (*Id.*) Though there are issues of fact surrounding the authenticity of these grievances and what was done with them, because they do not create a genuine issue of material fact, it is unnecessary to resolve those questions as a part of ruling on the summary judgment motion.

One set of these grievances is about an alleged excessive use of force during a cell extraction on June 4, 2012. (DE # 56-1 at 7 and 3). Clearly those grievances are unrelated to whether Norington was served small, raw servings of nutra loaf. As such, they are not relevant to whether she exhausted her administrative remedies on the issue involved in this lawsuit.

The other set of grievances mention nutra loaf, but makes no mention of it being either small or raw. The informal grievance stated:

> You George Payne put me on "Nutra Loaf" stopping me from receiving my medically prescribed diet and denying me the same diets all other prisoners receive which is in strict violation of the State D.H.B. policy and done as a means of disciplinary action and punishment. I suggest you quit now.

(DE # 56-1 at 5.) The formal grievance stated:

> As a form and means to and for disciplinary action and disciplinary punishments on the above approximate dates, Correctional Officer George Payne restricted my access to my medical care, my medically prescribed diets, placing me on a "Nutra Loaf" which was a deviation

2

> from the same diets provided to other committed persons prescribed medical diets as a form of medical treatments and care. There was no documented medical reasons for Officer Payne interfering with my medical care forcing upon me as a means (by a 6/4/12 dated memo) of and to mentally abuse me, humiliate me, retaliate against me as well as discriminate against me. A deviation from my medical care as it had/has been prescribed which is in direct violation of the non-discretionary functions of State Policy 02-04-101 sections M.5, 6, and 7 which "<u>shall not</u>" be imposed as disciplinary punishment and disciplinary action which Officer Payne disregarded.

(DE # 56-1 at 9) (emphasis in original).

The issues in this lawsuit are: (1) whether the quantity of food that Norington was served was smaller than required for her medical diet, and (2) whether serving her raw food deprived her of the minimal civilized measure of life's necessities. (DE # 7 at 5-7); *see Farmer v. Brennan*, 511 U.S. 825, 832-34 (1994).

This set of grievances is about the use of food as a punishment and the allegation that she was deprived of her medical diet. Norington tried to raise these issues in her amended complaint, but she was not granted leave to proceed on either of them. Norington was placed on a nutra loaf diet as punishment, but (as the court explained in its screening order) this did not state a claim.

> "On June 4, 2012, George Payne issued a memo stating . . . that Ms. Norington was to receive only nutra loaf because of her assaulting staff with a lunch tray that was styrofoam and bodily waste on staff with a milk carton and sandwich baggies." (DE # 6 at 12.) Norington does not allege that it was wrong to punish her for throwing bodily waste on the guards. Nor was the punishment unrelated to the offense. Norington used food containers to hold her excrement so that she could throw it on guards. Temporarily changing her meals as a result is the kind of administrative decision that *Whitley* said "should be accorded wide-ranging deference . . . to preserve internal order and discipline and to maintain institutional security." 475 U.S. at 321-22.

(DE # 7 at 4 (ellipsis in original)). So too, the court explained that placing her on nutra loaf did not alter her medically prescribed diet because "[t]hough it is not entirely clear what [her medical] diet entails, based on her description of nutra loaf as "the days meals ground into one loaf and served after being cooked" (*id*. at 13), nutra loaf would not violate her prescribed diet because it would be the exact same food, albeit served in a much less appetizing way." (DE # 7 at 5.)

These grievances (even if they had been filed, read, and acted upon) would have done nothing to alert prison officials that Norington was being fed unconstitutionally small portions of inedible, raw food. Rather this set of grievances would have only served to inform officials of what they already knew – that she was being punished by being served nutra loaf which was merely her regular medical diet ground and cooked together. Because that is not a violation, such complaints would not have warranted any investigation. Because these grievances make no mention of the nutra loaf being small, raw, or inedible, they could not have alerted officials to the issues involved in this lawsuit.

Norington states that she spoke to George Payne about these issues (DE # 57-1 at 5), but that does not comply with the written requirements of the prison's grievance process. (DE # 44-1 at 6-35.)

> This circuit has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust

4

> remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

*Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Based on Norington's numerous other written grievances (DE # 44-1 at 36-48), including the ones that she claims that she filed in relation to this incident (DE # 56-1 at 3-10), it is clear that she was well aware of the grievance process and how to use it.

Norington indicates that she wrote to George Payne in 2011, a year before the events in question here (DE # 57-4 at 2-4) about her medical diet, but as previously explained, that is not the issue in this case. Moreover, nothing written a year previous could possibly be relevant to the question of whether she exhausted her administrative remedies in this case.

Finally, Norington also complains that her grievances and legal mail have been mishandled over the years. (*See* DE # 58-3, DE # 58-4, and DE # 58-5.) That is not relevant here because the court has accepted (for the purpose of this order) that she tried to file the formal and informal grievances which she claims demonstrated that she had exhausted her administrative remedies. Those grievances were not found wanting because they were not properly filed, they were found wanting because they did not address the issues in this lawsuit.

Therefore, summary judgment must be granted because Norington has not exhausted her administrative remedies as required by 42 U.S.C. § 1997e(a). However, because "all dismissals under § 1997e(a) should be without prejudice," the dismissal will be without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

For the foregoing reasons, the summary judgment motion (DE # 44) is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

Date: November 6, 2013

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT